# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA      :
a municipal corporation       :     [Removal from the Superior Court of
441 4th Street, N.W., 10th Floor  :     the District of Columbia, Case No.: 2021
Washington, D.C. 20001     :     CA 001072 B]
                             :
          Plaintiff,     :
                             :     Civil Action No.: _____
        v.                 :
                             :
OPPORTUNITY FINANCIAL, LLC   :
130 E. Randolph Street, Suite 3400   :
Chicago, IL 60601           :
                             :
          Defendant.   :

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant Opportunity Financial, LLC ("OppLoans") hereby removes the state court civil action pending in the Superior Court of the District of Columbia, Case No. 2021 CA 001072 B, to the United States District Court for the District of Columbia.

In support of this Notice of Removal and as grounds for removal, OppLoans states as follows:

## PROCEDURAL HISTORY

1. On April 5, 2021, the District of Columbia ("Plaintiff") filed a complaint ("Complaint") under the caption *District of Columbia v. Opportunity Financial, LLC*, Case No. 2021 CA 001072 B (the "State Court Action").  A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

2.      On that day, the Superior Court of the District of Columbia issued a summons to OppLoans.  *See* Ex. 1.

3.      Also on that day, OppLoans, through counsel, accepted service of the Complaint, summons, initial order, and information sheet.

4.      On April 16, 2021, the parties filed a Praecipe to Extend Time to Respond to the Complaint granting OppLoans a twenty-one (21) day extension, until May 17, 2021, to answer or otherwise respond to the Complaint.  A true and correct copy of the Praecipe is attached as **Exhibit 2**.

5.      Exhibits 1 and 2 constitute all the process, pleadings, and orders that have been served upon OppLoans in connection with the State Court Action and are attached pursuant to 28 U.S.C. § 1446(a).

6.      A true and correct copy of the State Court Action docket is attached as **Exhibit 3**.

7.      The Complaint challenges interest rates lawfully charged by FinWise Bank ("FinWise"), a state-chartered bank under a federal statutory and regulatory scheme administered by the Federal Deposit Insurance Corporation ("FDIC"), as well as OppLoans' lawful role as a service provider for FinWise.  Specifically, the Complaint alleges several claims against OppLoans based on the theory that the interest rates on those loans exceed the interest rate permitted by District of Columbia law, notwithstanding the fact that FinWise (and not OppLoans) is the lender for these loans.  On the basis of these allegations, the Complaint asserts violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq* ("CPPA").  As set forth in further detail, federal banking laws completely preempt these claims and the allegations necessarily raise substantial and disputed issues of federal law.  Accordingly, federal question jurisdiction exists.

## PARTIES

8.      Plaintiff the District of Columbia is a municipal corporation and the local government for the territory constituting the permanent seat of the government of the United States.

9.      Defendant OppLoans is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

## TIMELINESS OF REMOVAL

10.      Pursuant to 28 U.S.C. § 1446(b), the defendant has 30 days to remove to federal court following service of a copy of the complaint, or within 30 days after service of summons if the complaint has been filed in court and is not required to be served on the defendant, whichever period is shorter.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).  OppLoans voluntarily accepted service of the Complaint on April 5, 2021.  This Notice of Removal is therefore timely.

## BASIS FOR REMOVAL JURISDICTION

11.      Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  As set forth below, this Court has original jurisdiction over the State Court Action under federal question jurisdiction, 28 U.S.C. § 1331.

12.      Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over those claims, if any, that are not independently removable.  OppLoans also invokes all other grounds for removal that exist under applicable law.

13.      OppLoans' recitation of the claims in the State Court Action for purposes of establishing grounds for removal is not a concession that the claims have merit, and OppLoans

reserves all rights and applicable defenses to the claims and legal theories in the State Court Action, and denies that Plaintiff is entitled to any relief.

## FEDERAL QUESTION JURISDICTION EXISTS

14.     Federal question jurisdiction exists when an action presents a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a claim ordinarily arises under federal law only when a federal question is presented on the face of the complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This action, however, can be removed under two recognized exceptions to this rule.

15.     First, federal question jurisdiction exists and removal is proper because Plaintiff's claims against OppLoans fall under the "complete pre-emption" exception to the well-pleaded complaint rule. *Id.* at 393. These claims are subject to federal jurisdiction because, among other things, they purport to challenge the amount of interest charged on loans made to consumers in the District of Columbia by an FDIC-insured, state-chartered bank, and state-law challenges to the amount of interest charged by a state-chartered, federally-insured banks are completely preempted and arise under federal law.

16.     Second, federal question jurisdiction exists because the Complaint raises substantial and disputed issues of federal law that must be resolved. As explained below, the claims in the Complaint depend on a disputed, substantial federal issue: the construction, interpretation, and validity of federal banking laws and regulations governing the rate of interest federally-insured, state-chartered banks may charge and the impact of post-origination transactions on the valid rate. Several of Plaintiff's claims turn on the application, scope, and enforceability of these laws and regulations that the Court will inevitably be required to interpret and apply. Thus, even if the Court finds complete preemption does not apply, the substantial and disputed federal

issues raised by the Complaint are sufficient to invoke federal question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

   **A.      Section 27 Completely Preempts Plaintiff's Claims Challenging the Interest Rate Charged on Loans Made by FinWise Bank**

   17.    OppLoans is a leading financial technology platform and service provider focused on helping middle income, credit-challenged consumers build a better financial path.  OppLoans' platform allows smaller banks, like FinWise, to provide access to simple, short-term lending products for consumers who may otherwise be turned away by traditional lenders in light of their credit profile.  FinWise uses OppLoans' technology platform to provide its loan products to consumers throughout the United States (the "FinWise Loan Program" or "Program").

   18.    Each person who obtains a loan under the Program first enters into a loan agreement and promissory note by and between the borrower and FinWise.  *See* Declaration of Chris McKay, ¶ 3, attached hereto as **Exhibit 4**.  That loan agreement specifically identifies FinWise as the "lender" on the loan and OppLoans as the "servicer."  *Id.* at Ex. A, example loan agreement.  It also provides that FinWise will "extend credit" to the borrower by transferring funds into the borrower's designated bank account, and states that the borrower promises to pay the loan amount and interest back to FinWise until the loan is fully repaid.  *Id.*  Thus, the plain language of the loan agreements D.C. residents entered into with FinWise indicate FinWise is the lender on their loan, that FinWise would extend them credit by transferring money to their accounts, that they would need to repay FinWise, and that their loan's servicer would be OppLoans.

   19.    FinWise is an FDIC-insured, state-chartered bank located in Utah.  *See* Declaration of Michelle Rogers, Exs. A, B, attached hereto as **Exhibit 5**.  Thus, it is subject to the provisions of Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d ("Section 27").  Section 27 sets forth the interest rates that state-chartered, federally-insured institutions may

charge, and "creates a federal remedy in favor of borrowers who are charged rates in excess of the limit" therein.  *Hill v. Chem. Bank*, 799 F. Supp. 948, 951 (D. Minn. 1992).

20.     As explained below, because several of Plaintiff's state-law claims challenge the interest rate charged on loans originated by an FDIC-insured, state-chartered bank, they are completely preempted and federal question jurisdiction exists.

21.     Section 27 is part of a comprehensive scheme regulating the interest rates state and federally-chartered banks may charge.  Because the laws pertaining to state-chartered banks have substantially followed the laws pertaining to federally-chartered banks, an understanding of the law governing national banks is important.

22.     Title 12 U.S.C. § 85 ("Section 85") of the National Bank Act ("NBA") provides that a national bank "may take, receive, reserve, and charge on any loan . . . interest at the rate allowed by the laws of the State . . . where the bank is located."  Title 12 U.S.C. § 86, in turn, creates a private right of action for violations of the federal interest cap set forth in Section 85. These provisions were intended to protect national banks from discriminatory state banking laws and insure "competitive equality" between state and national banks. *Greenwood Trust Co. v. Mass.*, 971 F.2d 818, 826 n.6 (1st Cir. 1992); *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314 (1978).

23.     In *Marquette*, the Supreme Court held that Section 85 permitted a national bank to "export" a favorable interest rate from the state in which it was located to customers in another state, without regard to state laws to the contrary.  439 U.S. at 313-14, 317-19.  Accordingly, any state usury law to the contrary is preempted by the NBA.  *Marquette,* 439 U.S. at 308, 315-18 (affirming order concluding NBA preempted Minnesota usury law).

24.    Just as Section 85 permits national banks to export their home interest rate to other

states, the statute governing state banks—the Depository Institutions Deregulation and Monetary

Control Act ("DIDMCA")—"has a parallel provision" that entitles them to do the same.  *Piñon v.

Bank of Am., NA*, 741 F.3d 1022, 1025 (9th Cir. 2014).  In 1980, following a decade of inflation,

soaring interest rates, and a credit crunch, "state lending institutions were constrained in the

interest they could charge by state usury laws," while "[n]ational banks did not share this

inhibition" in light of the protections of the NBA, leaving state banks "at an almost insuperable

competitive disadvantage."  *Greenwood Trust Co.*, 971 F.2d at 826.  Recognizing the need to

"prevent discrimination against State-chartered" banks, Congress enacted Section 27 to grant the

same protections to state banks.  12 U.S.C. § 1831d.  The legislative history is clear that the purpose

of Section 27 was to remedy this inequality and "level the playing field between federally chartered

and state-chartered banks."  *Greenwood Trust Co.*, 971 F.2d at 826-27 (citing senators' statements

confirming the intent of Section 27 was to provide "parity" or "competitive equality" between state

and federal banks).  To achieve this objective, Congress "incorporated language from section 85"

of the NBA into DIDMCA and granted "all federally insured financial institutions—State banks,

savings associations, and credit unions—similar interest rate authority to that provided to national

banks."  Federal Interest Rate Authority, 85 Fed. Reg. 44,146, 44,147 (July 22, 2020).  "The

incorporation [of Section 85's authority] was not mere happenstance.  Congress made a conscious

choice to incorporate Section 85's standard."  *Id.*

25.    Because Section 85 of the NBA and Section 27 of the FDIA are "virtually identical

in substance, policy, and internal logic," *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363

(D. Utah 2014) (internal marks omitted), courts and regulators consistently find that these

provisions "should be interpreted the same way."  *Greenwood Trust Co.*, 971 F.2d at 827; *Cross-*

*County Bank v. Klussman*, No. C-01-4190-SC, 2004 WL 966289, at \*4 (N.D. Cal. Apr. 30, 2004) ("The historical record clearly requires a court to read the parallel provisions of [DIDMCA] and the [NBA] *in pari materia*."); FDIC, No. FDIC-93-27, *12 U.S.C. § 1831d Preempts Contrary State Common Law Restrictions on Credit Card Loans* (July 12, 1993), https://www.fdic.gov/regulations/laws/rules/4000-8160.html#fdic400093-27 ("We have stated consistently that [Section 27] was intended to give state-chartered FDIC-insured banks the same 'most favored lender' status and right to export interest enjoyed by national banks under 12 U.S.C. 85").

26.    In *Beneficial Nat'l Bank v. Anderson*, the Supreme Court held that §§ 85 and 86 of the NBA completely preempt state-law usury claims against national banks. 539 U.S. 1, 11 (2003) ("Because §§ 85 and 86 provide the exclusive cause of action for [usury] claims, there is, in short, no such thing as a state-law claim of usury against a national bank . . . . This cause of action against national banks only arises under federal law and could, therefore, be removed under § 1441."). This holding applies with full force and effect to usury claims as to loans made by state-chartered banks. As explained above, Section 27 of the FDIA incorporates the operative language of 12 U.S.C. §§ 85 and 86 and provides identical preemption protection to state-chartered banks. *Infra* at 6-7. Indeed, both Section 27 and the NBA specify the amount of "interest" that a subject bank may charge and provide an exclusive remedy for violations. *See* 12 U.S.C. §§ 85, 86, 1831d. And courts recognize that "[t]he historical record clearly requires a court to read the parallel provisions of [DIDMCA] and the [NBA] *in pari materia*." *Greenwood Trust Co. v. Mass.*, 971 F.2d at 826-827.

27.    As the Supreme Court held in *Beneficial*, a state-law usury claim directed at a national bank "arises under" federal law, and therefore is removeable, even if the plaintiff purports

to sue under state law.  539 U.S. at 8.  Numerous courts assessing complete preemption under

Section 27 have followed *Beneficial*.  *See, e.g., Discover Bank v. Vaden*, 489 F.3d 594, 606 (4th

Cir. 2007), *rev'd on other grounds* ("Given the express preemption language of [Section 27], the

statute's legislative history affirming Congress' intent to provide competitive equality between

national and state-chartered banks, the virtual identity of the preemption language in the NBA and

that of [Section 27], and the Supreme Court's finding of complete preemption under the NBA, we

are hard-pressed to conclude other than that Congress intended complete preemption of state-court

usury claims under [Section 27].").

28.     Here, many of Plaintiff's claims specifically challenge the rate of interest charged

on loans made by FinWise on the grounds that the rate exceeds the maximum interest rate set by

D.C. Code § 28-3301(a).  *See, e.g.*, Ex. 1 ¶ 45 ("District consumers have paid or been charged

millions of dollars in unlawful interest on the loans provided by OppFi."), ¶ 56 ("Defendant's . . .

loans contain an APR in excess of the District's legal limit for interest"), ¶ 59 ("Defendant has

engaged in unfair and unconscionable practices affecting District consumers . . . by knowingly

offering, providing, servicing, and marketing predatory, high-cost loans to consumers in the

District of Columbia, causing substantial harm to such consumers."), ¶ 66 ("OppFi's offer of loans

in violation of the District's interest rate laws are unlawful trade practices that violate D.C. Code

§ 28-3904(ff).").  Because these claims specifically challenge the interest rate charged by a state-

chartered bank, Section 27 completely preempts them.

29.     Plaintiff's decision to challenge the legality of FinWise's loans but *not* name

FinWise as a defendant does not change the analysis.  The FDIC issued formal rulemaking in 2020

confirming what has long been the law: that Section 27 looks to the interest rate charged at

origination, and that the preemptive force of Section 27 applies throughout the life of the loan,

including after any full or partial sale or assignment.  12 C.F.R. § 331.4(e) (the "Interest Rate Authority Rule").  In the notice accompanying the publication of the formal rule, the FDIC also reiterated the long-held principle that an "implicit component" of state-chartered banks' express right to make loans at interest rates permitted in their home states "is the right to assign the loans under the preemptive authority of section 27."  FDIC, Final Rule, Federal Interest Rate Authority, 85 Fed. Reg. 44,146 (July 22, 2020).  Plaintiff's attack on FinWise's loans is a direct attack on those rights and is completely preempted.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) (explaining that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade'" federal preemption through artful pleading) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

30.    Nor does Plaintiff's conclusory allegation that OppLoans is the "true lender" change the analysis.  This transparent attempt to end-run federal preemption fails.  As found in *Beneficial*, *Vaden*, and elsewhere, this challenge is properly a matter of federal law and the subject of complete preemption.  *See Krispin v. May Dep't Stores Co.,* 218 F.3d 919, 924 (8th Cir. 2000) (holding Sections 85 and 86 of the NBA completely preempted usury claims against non-bank assignee of credit accounts originated by a national bank and explaining that "it makes sense to look to the originating entity (the bank), and not the ongoing assignee (the store), in determining whether [preemption] applies"); *State Farm Bank, F.S.B. v. District of Columbia*, 640 F. Supp 2d 17, 24 (D.D.C. 2009) (finding that the focus must be on "the activity being regulated, not the actor" when determining if preemption applies to state law claims against a non-bank); *Santos v. Household Int'l, Inc.*, No. C03-1243 MJJ, 2003 WL 25911112, at *3 (N.D. Cal. Oct. 24, 2003) (concluding that complaint asserting claims under California's consumer protection statutes was

properly removed because the plaintiff's contention that over limit fee was unconscionable "directly assert[ed] a usury cause of action" that was completely preempted).

**B.      Federal Question Jurisdiction Exists Because the Complaint Raises Substantial and Disputed Federal Issues That Must Be Resolved**

31.      Removal pursuant to federal question jurisdiction is also proper where substantial and disputed federal issues are raised by state-law claims. *Grable,* 545 U.S. at 312; *see also Collier v. National Penn Bank,* CIV.A. 12-79, 2012 WL 1214325, at *2 (E.D. Pa. Apr. 11, 2012) ("'federal-question jurisdiction will lie over state-law claims that implicate significant federal issues,' even if they are not raised directly.").   Under this doctrine, the question of whether jurisdiction exists depends on whether "[the] state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.   To assess the propriety of removal based on significant federal issues, the Supreme Court has outlined a four-part test whereby federal jurisdiction over state-law claims will lie if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (*citing Grable*, 545 U.S. at 314).

32.      If each of the *Grable* elements is met, jurisdiction is proper because there is a "'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."   *Id*. (*quoting Grable*, 545 U.S. at 313-14).   The doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312; *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) ("Federal jurisdiction is favored in cases that

present a nearly pure issue of law that could be settled once and for all and thereafter would govern numerous cases.") (internal marks omitted).

33.     This case clearly satisfies the first two requirements of the *Grable* test because Plaintiff's allegations and requested relief necessarily raise disputed issues of federal law.   A federal issue is necessarily raised here because an examination of federal statutes, regulations, and regulatory guidance as applied to state-chartered banks and their service providers is required to resolve the viability of the pending claims.  Indeed, the Complaint raises several substantial federal issues separate and apart from the applicability of preemption.

34.     First, determining which interest rate cap applies to the loans at-issue will require interpretation and analysis of federal laws and regulations.  Plaintiff asserts claims premised on the allegation that the interest rates charged on the loans FinWise made exceed D.C.'s statutory interest rate cap set forth at D.C. Code § 28-3301(a).  *See* Ex. 1, ¶¶ 61-66.  To prevail on that claim, Plaintiff bears the burden of establishing that rate cap applies at all. *Martinez v. District of Columbia*, 503 F. Supp. 2d 353, 356 (D.D.C. 2007) ("The party who makes a claim has the burden of proving it.").  Under federal law, loans made by state banks are subject only to the rate cap in the state in which they are located.  12 U.S.C. § 1831d(a).  FinWise is located in Utah, which unlike D.C. allows parties to contract for "any" interest rate on a loan.  Utah Code Ann. § 15-1-1(1).  Thus, to determine whether Plaintiff can establish an element of its claim—the applicability of the interest rate cap Plaintiff claims was violated—the  Court will necessarily have to analyze and interpret Section 27's interest rate provisions as well as formal FDIC rulemaking clarifying those provisions apply post-origination regardless of whether there has been a partial or complete sale or assignment of the loan.  This is a clearly disputed and substantial federal issue at the heart of this lawsuit, and it must be resolved in order to adjudicate the claims.  *See Collier*,

2012 WL 1214325 at *2-6 (holding that *Grable* jurisdiction existed over state-law unconscionability claims against a national bank for charging overdraft fees without giving customers an opportunity to opt out of them because the court would have to interpret federal regulations governing the imposition of such fees in order to resolve the claims).

35.     Second, as part of the above analysis, the Court will necessarily have to interpret the meaning of recent FDIC rulemaking providing that "[w]hether interest [charged] on a loan is permissible under [S]ection 27 . . . is **determined as of the date the loan was made**," and that **"[i]nterest on a loan that is permissible under [S]ection 27 . . . shall not be not affected by . . . the sale, assignment, or other transfer of the loan, in whole or in part**." 12 C.F.R. § 331.4(e) (emphasis added).  This rule is central to the resolution of the claims in this case.  The loans at-issue were made by a state bank located in Utah, a state which has no interest rate cap and expressly permits parties to agree to "any" interest rate.  Utah Code Ann. § 15-1-1(1).  And the Interest Rate Authority Rule confirms that the permissibility of the interest rate originally charged extends throughout the life of the loan and applies after any alleged sale or assignment of loan receivables to OppLoans.  Thus, determining the interest rate cap applicable to the loans requires analysis and interpretation of the FDIC's Interest Rate Authority Rule under federal law.  *See Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299 SNLJ, 2017 WL 633815, at *1 (E.D. Mo. Feb. 16, 2017) (finding *Grable* jurisdiction existed over state-law fraudulent inducement claim because resolution of the claim would depend on analysis and interpretation of federal regulations).

36.     The next two requirements of the *Grable* test are met as well because the federal issues raised by the complaint are substantial and can properly be resolved by a federal court without departing from the federal-state balance envisioned by Congress.

37.     There can be no doubt these federal issues are substantial.  As explained above, Congress enacted Section 27 to prevent discrimination against state-chartered banks whose loans were subjected to interest rate caps that did not apply to loans made by national banks.  *Supra* ¶ 24. The claims here squarely raise the specter of restoring that discrimination by subjecting loans made by state banks to caps that do not apply to loans made by national banks.

38.     That Plaintiff has intentionally chosen not to name a state-chartered bank as a defendant does not make the federal issues any less substantial.  An attack on a state-chartered bank's partners, assignees, or buyers is effectively on attack on the bank itself, especially banks that originate but do not service their loans.  As the FDIC explained in the notice accompanying the Interest Rate Authority Rule, an "implicit component" of state banks' right to make loans at interest rates permitted in their home states "is the right to assign the loans under the preemptive authority of section 27."  *Supra* ¶ 29.  Plaintiff's theory in this case depends on the elimination of this right, which effectively eliminates the right of banks to lend at a statutorily authorized rate unless they hold a loan after origination, which is not required by federal law.  As the FDIC explained, such an outcome would raise "safety and soundness concerns" by "expos[ing] State banks to increased risk in the event they need to sell their loans to satisfy their liquidity needs in a crisis."  85 Fed. Reg. at 44,146.

39.     Finally, the issues raised by the Complaint are substantial because they implicitly challenge the FDIC's regulatory authority over lending by state-chartered banks.  Under federal law, state-chartered banks like FinWise are allowed to engage service providers like OppLoans to perform services on the bank's behalf.  12 U.S.C. § 1867(c).  Such service providers are subject to regulation and examination by the FDIC as if the services were provided by the bank itself.  12 U.S.C. § 1867(c)(1).  And the FDIC holds state-chartered banks responsible for their service

providers. 12 U.S.C. § 1867(c)(1). Given the clear federal interest in regulating state-chartered banks through the extensive regulatory structure implemented, monitored, and overseen by the FDIC, the disposition of the Complaint's claims by a federal court will maintain the proper federal-state balance envisioned by Congress. In contrast, the impact on specific state law usury claims through removal will be minimal.

40. *Grable* establishes that this action involving federal statutes, regulations, and regulatory guidance belongs in federal court and such removal will not overwhelm the federal docket or unduly disrupt state prosecution of usury claims.

## SUPPLEMENTAL JURISDICTION

41. This Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any claims against OppLoans that are not independently removable. *See* 28 U.S.C. § 1367(a).

## REMOVAL IS PROPER

42. Removal to the United States District Court for the District of Columbia is proper because it is the district within which the State Court Action is pending. *See* 28 U.S.C. § 1441(a).

## NOTICE TO STATE COURT AND PLAINTIFF

43. Pursuant to 28 U.S.C. § 1446(d), OppLoans will promptly serve a copy of this Notice of Removal on counsel for Plaintiff and will file a copy of this Notice with the Clerk of the Superior Court of the District of Columbia.

WHEREFORE, the State Court Action now pending in the Superior Court of the District of Columbia, Case No. 2021 CA 001072 B, is hereby removed to the United States District Court for the District of Columbia.

Dated: May 5, 2021                              Respectfully submitted,

/s/ Michelle Rogers
Michelle Rogers (D.C. Bar No. 498625)
Katie Halliday (D.C. Bar No. 992401)
BUCKLEY LLP
2001 M Street NW, Suite 500
Washington, DC 20036
Telephone: (202) 349-8000
Facsimile: (202) 349-8080
*mrogers@buckleyfirm.com*
*khalliday@buckleyfirm.com*

Fredrick S. Levin
(*Pro hac vice motion forthcoming*)
BUCKLEY LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone: (310) 424-3984
Facsimile: (310) 424-3960
*flevin@buckleyfirm.com*

Michael A. Rome
(*Pro hac vice motion forthcoming*)
BUCKLEY LLP
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone: (310) 424-3902
Facsimile: (310) 424-3960
*mrome@buckleyfirm.com*

*Counsel for Opportunity Financial, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail, electronic mail and electronically filed with the Clerk of the Court by using the CM/ECF system this 5th day of May, 2021, which will send a notice of electronic filing to all parties or counsel of record registered with the CM/ECF system as identified on the service list below.

Wendy J. Weinberg
Office of The Attorney General for the District of Columbia
441 4th Street, N.W., Suite #1100
Washington, D.C. 20001
*Counsel for the District of Columbia*


/s/ Michelle Rogers
Michelle Rogers (D.C. Bar No. 498625)