# EXHIBIT 1

Filed
D.C. Superior Court
04/05/2021 07:22AM
Clerk of the Court

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **DISTRICT OF COLUMBIA**<br>a municipal corporation<br>400 6th Street, N.W., 10th Floor<br>Washington, D.C. 20001,<br><br>       **PLAINTIFF**,<br><br>  v.<br><br>**OPPORTUNITY FINANCIAL, LLC**<br>130 E. Randolph Street, Suite 3400<br>Chicago, IL 60601,<br><br>       **DEFENDANT**. | Case No.:<br>Judge:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATIONS OF THE
## <u>CONSUMER PROTECTION PROCEDURES ACT</u>

Opportunity Financial, LLC ("OppFi") is a financial technology company that markets and provides predatory, high-interest, short-term loans to individual consumers. One such loan product offered by OppFi is OppLoans. OppFi entices consumers to apply for an OppLoan through deceptive marketing that promises fast and easy cash. It misrepresents the benefits of the loans and fails to disclose important details about the loans' cost and risk to consumers. Despite advertising OppLoans as consumer-friendly products, OppFi's loans saddle consumers with exorbitant and unfair interest rates of up to 198% that far exceed the permissible interest allowed in the District. Indeed, OppFi knows that many consumers cannot afford its loans—up to a third of OppLoans consumers will default—and that its loans are not appropriate for consumers seeking a lending product for general everyday purposes. Yet it fails to clearly disclose these important facts to consumers. And despite providing thousands of loans in the District of Columbia, OppFi has failed to obtain a money lender license as required by District law.

OppFi's deceptive and unfair conduct violates the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.* At this time of heightened vulnerability for low-income consumers, the District brings this case to permanently enjoin OppFi from engaging in activities that violate the CPPA; to obtain restitution for District consumers and civil penalties as permitted by statute; and to recover the District's fees and costs. In support of its claims, the District states as follows:

## JURISDICTION AND PARTIES

1.      This Court has jurisdiction over the subject matter of this case pursuant to D.C. Code §§ 11-921 and 28-3909.

2.      This Court has personal jurisdiction over Defendant OppFi pursuant to D.C. Code § 13-423(a). OppFi has offered, provided, serviced, and advertised loans to District residents. OppFi operates through several websites, including opploans.com, to offer, sell, and supply loans to District residents.

3.      Plaintiff District of Columbia ("District"), a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States. The District is represented by and through its chief legal officer, the Attorney General for the District of Columbia. The Attorney General has general charge and conduct of all legal business of the District and all suits initiated by and against the District and is responsible for upholding the public interest. D.C. Code § 1-301.81(a)(1). The Attorney General is specifically authorized to enforce the District's consumer protection laws, including the CPPA, pursuant to D.C. Code § 28-3909.

4.      Defendant OppFi is a Delaware Limited Liability Corporation, headquartered in Chicago, Illinois.

## FACTUAL ALLEGATIONS

I.    **OppFi's Lending Business and Structure**

5.    In 2012, OppFi started its business as a storefront lender, but in 2013 moved its business online with a focus on nonprime consumers.

6.    Around 2017, OppFi decided to expand its business model and launch a bank-sponsored installment product. The purpose of the expansion was to reach consumers in states where it was not able to operate as a state licensed lender. In its discussions with banks, OppFi proposed a model where loans would be provided based upon an underwriting model developed by OppFi and using OppFi as the servicer for the loans.

7.    In 2018, OppFi entered into a partnership with FinWise Bank ("FinWise"), a Utah-chartered bank, and started offering, providing, servicing, and advertising online loans to District residents. The loans that Defendant OppFi provides through its partnership with FinWise are called "OppLoans." Since 2018, OppFi has provided loans to over four thousand consumers in the District in amounts that typically range between $500 and $4000.

8.    OppFi is the true lender of OppLoans. OppFi has the predominant economic interest in OppLoans, bears the risk of poor loan performance, and funds the expenses for the provision of the loans.

9.    OppFi conducts its OppLoans lending business through a group of wholly owned subsidiaries. One set of subsidiaries are "special purpose vehicles," or shell companies, created by OppFi to make daily purchases of nearly all of the receivables of the loans it provides in conjunction with FinWise. Receivables are the amounts due on a loan including the repayment of interest and principal. OppFi's shell companies purchase the receivables shortly after the loan is originated in partnership with the bank.

10.     OppFi also takes the risk of poorly performing OppLoans. Its accounting statements include provisions for losses on the loans (the receivables), costs related to its funding of the purchases of the receivables, and the costs of loan origination.

11.     By comparison, FinWise's risk and reward in conjunction with these loans is minimal. Both FinWise's fees and its expenses are capped under its agreements with OppFi. OppFi's assumption of the risk and purchase of the receivables is guaranteed through their agreements with FinWise, including the cash required to be held in blocked accounts by the shell companies that OppFi controls.

12.     OppFi provides FinWise with three additional layers of security to guarantee OppFi's purchase of the loan receivables: a cash collateral account, an alternate collateral account (both with defined minimum balances), and letters of credit for the benefit of FinWise.

13.     In a February 2021 presentation to investors,[1] OppFi confirmed it has the predominant economic interest in each loan. As OppFi admitted in the presentation, excerpted below, for each customer that provides $1,657 in revenue, OppFi realizes all $535 in profits generated by the loan. FinWise, on the other hand, realizes only a portion of the total $138 in servicing costs generated on that loan. The remainder of the revenue goes towards write-offs,

---

[1] Available at https://www.opploans.com/wp-content/uploads/2021/01/Investor-Presentation-02.10.2021-final.pdf (highlighting added) (last checked March 29, 2021).

acquisition costs, and interest expenses on the debt that OppFi incurs to finance its lending.



14.     In 2019, OppFi's revenues from its lending activities totaled $268,000,000.

## II.     OppFi's Marketing, Servicing, and Origination Activities

15.     OppFi also conducts and pays for all the marketing of OppLoans, which costs the company tens of millions of dollars each year.

16.     OppFi utilizes a variety of methods to find potential borrowers, including prescreened direct mail, e-mails directed at District residents, search engine optimization, online lead generators, social media, and multimedia. OppFi also targets consumers through other digital channels, as well as through its website, opploans.com.

17.     OppFi creates the marketing materials and product offerings to promote OppLoans, which is an OppFi trademarked product. Both the program guidelines used to operate the OppLoans program and the advertising materials that OppFi uses to promote OppLoans are the intellectual property of OppFi.

18.     OppFi (through one of its subsidiaries) is also the servicer for OppLoans. It has the exclusive license to use customer information and the right to contact and communicate with borrowers about potential loans.

19.     Consumers who wish to obtain an OppLoan must go to opploans.com. Consumers attempting to obtain an OppLoan directly from FinWise through FinWise's website, finwisebank.com, are redirected to OppFi's website for the loan.

20.     OppFi's duties as a servicer include processing the loan applications, maintaining the originals or copies of all loan documents, identifying eligible applicants and the amounts of the loans, and establishing the account into which the proceeds from the loans are deposited.

21.     OppFi executes all notices to consumers concerning the legal status of the loans and has the authority to grant loan modifications to borrowers.

22.     Potential OppLoans borrowers are screened based upon lending criteria developed by OppFi. OppFi has a proprietary scorecard that it has developed over time to identify qualified borrowers as well as the amount that the borrower should receive. OppFi and FinWise utilize these analytics, software, and underwriting models for the provision of OppLoans.

23.     The overwhelming majority of the lending decisions for OppLoans are automated using OppFi's proprietary credit-decisioning algorithms, with the application and approval process taking only around five minutes.

24.     OppFi spends millions of dollars each year to support its national provision of loans, including for advertisements, loan origination, collection, and technology costs.

III.    **OppFi Deceptively Marketed Its Loans to District Consumers**

25.     OppFi has deceptively marketed its OppLoans including, among other ways, by (i) misrepresenting the benefits of the loans, including by stating that OppLoans are more

affordable than payday loans and by stating that its credit reporting will help consumers build a positive credit history; and (ii) failing to clearly disclose material facts concerning OppLoans, including that it should only be used in emergencies and that refinancing will result in increased costs.

### A.    OppFi's Misrepresentations Concerning OppLoans

26.    OppFi repeatedly misrepresents and overstates the benefits of OppLoans in order to entice consumers to take out loans from OppFi.

27.    For example, on its website, and in its emails to consumers, OppFi advertises its loans as superior to payday loans because they are "faster, more affordable and more personal than payday loans." It describes OppLoans as better than "predatory" payday loans: "[t]he bottom line: Installment loans are safer, higher-dollar and longer term than predatory payday loans which are simply traps designed to pray on the financially vulnerable."

28.    Payday loans are illegal in the District, and thus OppFi's comparison of its products to such illegal loans is misleading. More fundamentally, however, a consumer borrowing from OppFi will pay significantly more to repay a loan from OppFi than a loan from a payday lender.

29.    For example, a typical payday lender charges a fee of $15 per $100 borrowed. For a payday loan of $1000, the fee would therefore be $150.

30.    Yet, if an OppFi customer borrows that same $1000, at an APR of 160% and a payment term of 9 months (the common terms for an OppLoan), that consumer would pay back $734.63 above the principal amount borrowed for a total of $1,734.63. This amounts to almost five times the $150 that the payday borrower would pay above the principal amount on a $1000 loan.

31.     On its website, OppFi directs consumers to focus on the APR, rather than the overall costs of the loan. "Payday loans may not seem so expensive at first glance, but the APR tells another story." But this comparison is inapposite and misleading. Even if in some circumstances the APR on a payday loan exceeds the APR offered on OppLoans, as explained above, consumers pay far more in interest for loans of the same amount offered by OppLoans.

32.     In addition, OppFi advertises that taking out an OppLoan will help consumers build their credit histories. For example, on its website, OppFi states that it will "go above and beyond to make your personal loan experience easy and help you build your credit history."

33.     OppFi, however, knows that for a large portion of its consumers, these promises are false. Indeed, OppFi's underwriting model anticipates that up to one third of their borrowers will fail to repay the loan and default. For these consumers, as well as other consumers who fall behind on their loans, OppFi reports negative information to the credit reporting agencies, damaging their credit history. In fact, OppFi reports negative information about consumer payments over three times more frequently than it reports positive information. Simply put, for the majority of consumers, OppLoan's credit reporting hurts their credit history rather than helping it.

**B.      OppFi's Omissions of Material Facts Concerning OppLoans**

34.     OppFi also fails to disclose material information concerning OppLoans to prospective borrowers.

35.     For example, OppLoans are high-cost risky loans that are illegal in the District. Indeed, OppFi itself believes that its loans are not appropriate for general purposes and that they should only be used for emergencies. Nevertheless, OppLoans does not clearly or adequately disclose this important information to prospective borrowers. Although OppFi does include a statement that OppLoans are an expensive form of credit, this statement is at the bottom of its

webpage where consumers are not likely to see it, is buried within other statements, and is in a font size and color that makes it almost unreadable. Critically, however, nowhere in the application process does OppFi warn consumers that OppLoans should not be used for general purposes and only be used for emergencies.

36.     In addition, OppFi fails to disclose material information when it reaches out to existing qualifying customers to invite them to refinance their loans. Customers are qualified to refinance OppLoans if they have paid the lesser of 15% of their principal balance or $400.

37.     These refinances provide limited funds to consumers because they only provide consumers with the amount of funds that they have already paid off. For instance, if a consumer's first loan was for $1000, and the consumer paid off $200 in principal, the consumer would receive only $200 in the refinance, to bring the new principal balance back to $1000.

38.     Approximately half of OppFi customers refinance their loans, with the average customer refinancing more than two times. In its solicitations, OppFi presents refinancing as a simple way for consumers to get more money. For instance, one solicitation touts: "Refinancing might sound complicated but it's actually pretty simple. To 'refinance' just means applying for a second loan to pay the balance of your existing loan and provide you additional funds."

39.     In its solicitations, OppFi fails to mention that refinancing a current loan is often more expensive than simply obtaining a second loan. For example, a consumer with an OppLoan for $1200 at a 160% APR who refinanced her loan after paying $258 in principal (receiving $258 in cash through the refinance) would pay a total of $1336.09 in interest as a result of the

refinance.[2] However, if that same consumer simply took out a second loan for $258, she would pay $1088.93 in combined interest on the two loans.[3]

40.     OppFi pushes consumers to refinance because these loans are less expensive for OppFi (despite being more expensive for the consumer) since OppFi does not have to incur the marketing and acquisition costs for these existing customers. Indeed, 75% of the pre-tax income that OppFi makes from OppLoans consumers is the result of refinancing.

## IV.     OppFi Provided Illegal Loans to District Consumers

41.     The District, like most states, has enacted limits on the legal interest rates for lending to prevent lenders from preying upon the District's most vulnerable residents. The District's interest rate cap for most loans in which the interest rate is expressed in the contract, is 24%. D.C. Code § 28–3301(a).

42.     From at least July 2018 until May 2020, OppFi offered and advertised loans to District residents at interest rates of up to 198%.

43.     The average OppLoan is a nine-month loan for $1200 at a 160% APR.

44.     Since 2018, OppFi has provided loans to over four thousand District consumers in amounts generally between $500 and $4000.

45.     District consumers have paid or been charged millions of dollars in unlawful interest on the loans provided by OppFi.

46.     Additionally, entities that offer loans in the District at any interest rate are required to obtain a money lending license. 16 DCMR § 201.1.

---

[2] After making six payments, the consumer would have paid $440.15 in interest on the first loan of $1200, and $895.93 in interest on the second loan of $1200, for a total of $1336.09.

[3] The consumer would pay $455.78 in interest on the loan of $1200, plus $192.99 in interest on the loan of $258, for a total of $1088.93.

47.   OppFi has never possessed a money lending license in the District of Columbia.

## COUNT ONE
### (Misrepresentations and Omissions
### in Violation of the Consumer Protection Procedures Act)

48.   The District re-alleges and incorporates by reference paragraphs 1 through 47. The CPPA is a remedial statute that should be broadly construed. It establishes a right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

49.   Consumers obtain loans from Defendant for personal, household, or family purposes and, therefore, these loans are consumer goods and services.

50.   Defendant, in the ordinary course of business, offers to sell or supply consumer goods and services and is therefore a merchant.

51.   In addition, Defendant is a merchant because it is connected with the supply-side of a consumer transaction.

52.   Merchants who violate the CPPA may be subject to restitution, damages, civil penalties, temporary or permanent injunctions, the costs of the action, and reasonable attorneys' fees. D.C. Code § 28-3909.

53.   The CPPA prohibits any person from engaging in unfair and deceptive trade practices, including by:

a.   "represent[ing] that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have," D.C. Code §28-3904(b);

b.   "misrepresent[ing] as to a material fact which has a tendency to mislead," D.C. Code §28-3904(e);

11

    c.  "fail[ing] to state a material fact if such failure tends to mislead," D.C. Code §28-3904(f); and

    d.  "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead," D.C Code §28-3904(f-1).

54.    Defendant's representations, express and implied, that it is permitted to offer loans in the District of Columbia, when, in fact, Defendant does not possess the required money lender license allowing it to lawfully make loans to District residents, and may not in any case provide loans in excess of the interest cap provided by District law, are representations that Defendant has an approval, certification, or status that it does not have and are unlawful trade practices that violate the CPPA, D.C. Code § 28-3904(b).

55.    Defendant's representations, express and implied, including its representations that:

    a.  its offer of loans is legal in the District of Columbia,

    b.  that its loans are better for consumers than payday loans, and

    c.  that using OppLoans will help improve consumers' credit rating,

are misrepresentations of material facts that have the tendency to mislead consumers and are unlawful trade practices in violation of D.C. Code § 28-3904(e).

56.    Defendant's omissions, including its failure to disclose or to adequately disclose:

    a.  that its loans contain an APR in excess of the District's legal limit for interest,

    b.  that its loans are high cost and should only be used in emergency situations, and

    c.  that it is more expensive for a customer to refinance an existing loan than to take out a new loan,

are omissions of material facts that mislead consumers and are unlawful trade practices in

violation of D.C. Code § 28-3904(f), or, alternatively, constitute ambiguities as to material facts

that have the tendency to mislead consumers and are unlawful trade practices in violation of D.C.

Code § 28-3904(f-1).

## COUNT TWO
### (Unfair and Unconscionable Practices
### in Violation of the Consumer Protection Procedures Act)

57.     The District re-alleges and incorporates by reference paragraphs 1 through 56.

58.     The CPPA prohibits any person from engaging in unfair trade practices. The

CPPA also prohibits any person from engaging in "unconscionable" practices where the seller

takes advantage of the "inability of the consumer reasonably to protect his interests." D.C. Code

§ 28-3904(r)(5).

59.     Defendant has engaged in unfair and unconscionable practices affecting District

consumers, in violation of D.C. Code § 28-3904 and § 28-3904(r), by knowingly offering,

providing, servicing, and marketing predatory, high-cost loans to consumers in the District of

Columbia, causing substantial harm to such consumers.

60.     Defendant's conduct, including inducing consumers with false and deceptive

statements to enter into predatory, high-cost loans, constitutes unfair trade practices that violate

D.C. Code § 28-3904 and unlawful trade practices that violate D.C. Code § 28-3904(r).

## COUNT THREE
### (Violations of D.C. Code § 28–3301(a) in Violation of
### the Consumer Protection Procedures Act)

61.     The District re-alleges and incorporates by reference paragraphs 1 through 60.

62.     The CPPA prohibits any person from engaging in unfair and deceptive trade

practices, including by violating the District's interest rate cap. D.C. Code § 28-3904(ff).

63.     The District's interest rate limit is 24% if the loan is provided by a licensed money lender and the interest rate is expressed in the contract, D.C. Code § 28–3301(a).

64.     OppFi has offered loans in the District at APRs of up to 198%, although most of the loans that it provided to District consumers were at an APR of 160%.

65.     OppFi is subject to the District's interest rate laws and it has offered loans that violate the District's law.

66.     OppFi's offer of loans in violation of the District's interest rate laws are unlawful trade practices that violate D.C. Code § 28-3904(ff).

<u>COUNT FOUR</u>
**(Violations of the DCMR as Violations of the Consumer Protection Procedures Act)**

67.     The District re-alleges and incorporates by reference paragraphs 1 through 66.

68.     The CPPA prohibits any person from engaging in unfair and deceptive trade practices, including by violating "any provision of title 16 of the District of Columbia Municipal Regulations." D.C. Code § 28-3904(dd).

69.     OppFi has engaged in the business of loaning money in the District without obtaining a license as a money lender as required under 16 DCMR § 201.1 and 16 DCMR § 200.4.

70.     OppFi's violations of Title 16 of the District of Columbia Municipals Regulations are unlawful practices in violation of D.C. Code § 28-3904(dd).

**PRAYER FOR RELIEF**

WHEREFORE, the District of Columbia respectfully requests this Court enter a judgment in its favor and grant relief against Defendants as follows:

a)      Permanently enjoin Defendant's violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28–3901, *et seq.*;

b)      Order Defendant to pay restitution and damages pursuant to D.C. Code §§ 28–3909(a) and (b); and § 26-905;

c)      Order that the loans marketed, offered, and sold by Defendants were unconscionable at the time they were made, or to have been induced by unconscionable conduct, and are therefore unenforceable and void, pursuant to D.C. Code §§ 28-3909 and 28-3812(g)(1);

d)      Order that the loans marketed, offered, and sold by Defendants in violation of 16 DCMR § 201.1 are unenforceable and void;

e)      Order the payment of civil penalties as permitted by statute pursuant to D.C. Code § 28–3909(b);

f)      Award the District the costs of this action and reasonable attorney's fees pursuant to § 28–3909(b); and

g)      Grant such further relief as the Court deems just and proper.

## Jury Demand

The District of Columbia demands a trial by jury by the maximum number of jurors permitted by law.

Dated: April 5, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

KATHLEEN KONOPKA
Deputy Attorney General
Public Advocacy Division

_____s/_____

BENJAMIN WISEMAN (#1005442)
Director, Office of Consumer Protection

15

_____s/_____
WENDY J. WEINBERG (# 445460)
Senior Assistant Attorney General
Office of Consumer Protection
Office of the Attorney General
400 Sixth Street, N.W., 10th Floor
Washington, D.C. 20001
(202) 724-1342
Wendy.Weinberg@dc.gov

DAVID BRUNFELD (#1672059)
Assistant Attorney General

Dated: April 5, 2021

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

District of Columbia

Case Number: _____

vs

Date: _____

Opportunity Financial, LLC

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* Wendy Weinberg | Relationship to Lawsuit |
|---|---|
| Firm Name: DC Office of the Attorney General | ☒ Attorney for Plaintiff |
| Telephone No.:        Six digit Unified Bar No.: 202-724-1342                        445460 | ☐ Self (Pro Se) ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury        ☐ 6 Person Jury        ☒ 12 Person Jury

Demand: $_____        Other: __injunctive relief__

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

NATURE OF SUIT:        *(Check One Box Only)*

### A. CONTRACTS                                        COLLECTION CASES

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only) | |

### B. PROPERTY TORTS

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

### C. PERSONAL TORTS

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☒ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE        IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

____s/ Wendy Weinberg____                    ____April 5, 2021____

Attorney's Signature                                         Date

CV-496/ June 2015

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

District of Columbia
_____
                                    Plaintiff
                vs.

Opportunity Financial, LLC              Case Number _____
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

　　　　You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

　　　　You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Wendy J. Weinberg
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

D.C. Office of the Attorney General
_____          By _____
Address                                                  Deputy Clerk
400 Sixth Street NW, 10th Floor, WDC 20001

202 - 724 - 1342
_____          Date _____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주세요          ያስፈልግ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

　　　　IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

　　　　If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

---

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

                                                    Por: _____
_____                        Subsecretario
Dirección

_____
                                                    Fecha _____

Teléfono
如需翻译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828

만약 번역을 원하시면 (202) 879-4828 로 전화주십시오    ኣማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ።

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4